Good morning, Your Honors. I'm Steve Habachek, Federal Defenders, on behalf of Mr. Garcia-Navarro. I'm going to address the 273.5 issue and then two related sentencing issues as to my client, and Mr. Chavez is going to address a specific issue with respect to Mr. Ayala. Your Honors, the Johnson case effectively overruled the analysis undertaken in Laurico-Yano, in which the court held that a 273.5 conviction under California law constituted a crime of violence. My court just within the last few weeks say that the Johnson case doesn't affect our law industry. I'm assuming that Your Honor is referring to the Banuelos-Ayala case. Correct. And it is awkwardly timed for me, to say the least. What happens is that Laurico comes out, then Johnson, then Banuelos. However, I still think that this court can decide the issue that we're raising today, because based upon the analysis in Banuelos, the arguments that I'm prepared to make this morning were never made in that case. Basically what happened is, and I'm referring specifically to page 1086 of Banuelos-Ayala, it identified the analysis that was applied in Laurico, which is effectively, this is not a battery case. It's battery plus traumatic condition. And so Banuelos stated that, and they said that this statute is different. The 273.5 is different from California battery. And that's all true. I don't have any quarrel with that at all. And so it rejected Banuelos' claim. But what I'm saying is that Johnson was effectively a game changer, and it changed the analysis that we have to apply. And the question that I'm going to ask the court to answer today is, is the whatever touching required under 273.5 plus traumatic condition equivalent to the level of violent force that's described in Johnson? And Johnson's very specific about the level of force that's required. These are all from page 1271 of the Supreme Court Reporter. It requires a substantial degree of force. It requires furious, severe, vehement force, great physical force or strength, strong physical force, or extreme physical force. And our position is, and this is never addressed in Banuelos, that 273.5A is an offense that can be committed by virtue of only minor traumatic condition. And that's at 273.5C of the California statute. So our position is that the level of violence required under the definition as adopted in Johnson is not categorically satisfied by a 273.5 conviction because it allows conviction based upon only minor injury. Minor traumatic condition, not minor injury. I mean, minor traumatic condition might be an oxymoron. It's a traumatic condition that's required, right? That's correct. But all trauma means is that it's happened as a result of the actual action of the defendant. I guess that's true. But it still can be minor. And I think that if the court looks at the actual analysis in Johnson, Johnson sets forth a test, and this is at page 1271 of the opinion as well. It says, We think it clear that in the context of the statutory definition of violent felony, the phrase physical force means violent force. That is, force capable of causing physical pain or injury to another person. Then it goes on to describe the level of force. So I think when we're talking about what sort of injury the Supreme Court is talking about in Johnson, that analysis has to be informed by the level of force that is described in the following two paragraphs of Johnson. And I think that this is particularly apt if you look at the test that I just cited from Johnson. It cites one case. The case it cites is Flores v. Ashcroft, which is a Judge Easterbrook opinion from the Seventh Circuit. Flores v. Ashcroft involves a statute that's effectively identical to the one that we're talking about today. It's a statute under which Mr. Flores was convicted of a class A misdemeanor that required bodily injury as an element of that offense. So when Flores v. Ashcroft reached the holding that the Supreme Court effectively adopted in Johnson, it was adopting a case that interpreted a statute that's virtually identical to 273.5. And I point the Court to page 669 of Flores v. Ashcroft, where it points out that bodily injury was an element of that offense. And then when Flores v. Ashcroft gets to the end of its analysis and reaches its holding and determines that the statute in that case did not qualify under the Section 16A definition, it said the elements of Flores' offense are on the contact side as opposed to the force side. Well, that's all very interesting, but this Court has given consideration to the question. And in California 273.A.5, it is a crime of violence. And since our Botanuelos case, we don't have any authority to start measuring how much blood was in his bloody nose or was the ear bitten clear off or just partly or whatever the domestic violence was. We don't, under 273.A. definitions, we don't measure the bloodshed or the bruises and broken bones. I understand, and certainly a factual inquiry wouldn't be appropriate because we're in Taylor analysis now, so we're really looking just at the statutory language. But I think Your Honor's question brings up two points. Number one is, what was the actual analysis in Banuelos-Ion v. Holder? It had nothing to do with anything that I've been talking about this morning. That issue was never raised in that case. It was never analyzed. There is no reasoned opinion that addresses the issues that I'm talking about this morning. But it did reach the conclusion that Johnson is perfectly consistent with what it was doing in that case and that holding, right? So we would have to slice it very thinly to distinguish that case from where we are now. I don't think you have to slice it thinly at all. I mean, I think you can write an opinion saying nobody raised the issue that Mr. Garcia Navarro is raising in Banuelos-Ion. Our definition in the Ninth Circuit as to what constitutes precedent is a reasoned disposition that other panels are expected to rely upon. There is no reasoned disposition as to the arguments that I'm making this morning. And that test came from Miller v. Gandy and Judge Kaczynski's concurring opinion, but it's been adopted later on by other opinions as well. And plus, I have the Supreme Court case that I sent up in the 28-J letter that says that issues that merely lurk in the record. Well, I don't think that the arguments that I'm making this morning even lurk in Banuelos-Ion. There's just simply no discussion whatsoever. So what California cases can you point to in which the nonviolent touching equal to that in Johnson has amounted to a 273.5 violation? Well, I think that was the second part of Judge Goodwin's question, so that's exactly what I'd like to talk about. The first point I would like to make is that this Court in Vidal and in Griselle said that if the overbreadth of the statute is apparent from the face of the statute, it's not necessary to- Yes, but the Supreme Court has said it doesn't want us to exercise legal imagination to come up with a conceivable basis for it covering that kind of conduct. I agree. And that's from Duenas-Alvarez. And Duenas-Alvarez is precisely the case that this Court was interpreting in both the en banc decisions in Vidal and Griselle. And so what those cases say in light of Duenas is that if the statute itself makes the overbreadth clear, that's as far as you need to go. 273.5C of the California Penal Code makes clear that it need be only a minor injury in order to satisfy this. Minor traumatic injury. Your view is that somebody going like this on someone's shoulder could be characterized as a trauma, right? Well, I think under the statute it would have to have a bruise. So I think you're hypothetical plus a bruise. And I know it may seem less than appealing, but that's exactly the analysis that Judge Easterbrook employed in Flores v. Ashcroft. And if I could just read briefly from page 670, he said, quote, a squeeze of the arm causes a bruise, close quote. That was one of his examples. And he said it's hard to describe any of this as violence. So basically exactly your hypothetical was addressed in Flores v. Ashcroft, the only case that Johnson cited in reaching its test. And that type of argument has been rejected. So your point is that when Benuelas looked at all these California cases and saw that it was really extreme violence that was falling under the statute, that was all unnecessary and indeed inappropriate because the language of the statute itself permits the theoretical prosecution for a bruise. I think, frankly, yes. I think that that analysis was mistaken. But even if that analysis were applicable in this case, I think you can also look at the – I think it's the Jackson case. Jackson is a case where the – a California case that's actually been discussed in a couple of these opinions. It's at 77 Calap 4574. In that case there was pushing. That was the act on the part of the defendant. And the victim, she didn't fall as a result of the push. But what happened was that after the push she turned around and she tripped over the curb and she got abrasions to her leg. Well, abrasions, I checked the OED online, and abrasions are defined as, quote, a superficial wound, comma, graze, comma, or scrape, close quote. I think that that would qualify as a type of minor injury that Judge Easterbrook's opinion in Flores v. Ashcroft would reject as indicia of the level of violence that is required. Well, in this particular case, the record shows that Ayala hit his wife in the face 20 or 30 times, knocked her on the ground, kicked her in the face, and was found by the police bleeding in the street. Now, isn't that enough to get a comma? None of those facts, Your Honor, can be considered under the Taylor analysis. Facts don't matter because you're focused solely on the language of the statute and what it could encompass. Me and the Supreme Court, we are focused on the language of the statute. And that's the analysis that we're supposed to employ. And I'll tell you, there are hypotheticals like that. I mean, this is a domestic violence type statute, so I'm sure that there are. Even if he beats the rap on this domestic violence, he's got this gun discharging a firearm charge on an earlier conviction. His record is as long as my arm. Your Honor, I'm certainly not going to endorse Mr. Garcia's record. It's bad. And I think that if this Court were to reach what I think are the proper results in the categorical analysis here, this case would get remanded and then a judge would exercise his 3553A discretion as to Mr. Garcia. And I'm sure that all of those facts would play a significant role in that ultimate analysis. But I'm glad that you brought up the other conviction that he suffered. It's an ADW. It actually did involve a gun. But, again, we don't go into the facts. And the ADW conviction basically suffers from the same problem as the 273.5, in that this Court's decision in Grajeda, which this time is a pre-Johnson decision, has the same problem. It doesn't employ the same violence type analysis. And if I could direct the Court to, I think it's page 1191 to 92, what happened was is that this Court basically decided that the least touching, again, the least touching is sufficient under that statute, with a deadly weapon or instrument is violent in nature. In nature. That's at 1192, and it says it again later on. Well, that's not the right test. The Supreme Court didn't talk about nature. It was interpreting the word force, which is in this enhancement statute. And when you have force, it has to be this extreme, violent, great physical strength type analysis. And, in fact, if you look at Section 16B of Title 18, that's the provision that contains the offense by its nature creates a risk of force, which seems to be the analysis that Grajeda was employing. But 16B's analysis isn't repeated in 2L1.2 of the guidelines, so that's completely irrelevant. So Grajeda hasn't applied the Johnson requirement of extreme violence. And then I don't want to take up all of Mr. Chavez's time, but there's an additional conviction for a statutory rape type offense, and I think that one's squarely controlled by this decision in Palaio Garcia. So none of these convictions should qualify, and I'd like to turn over the reins to Mr. Chavez. Good morning, Your Honors. James Chavez on behalf of Mr. Ayala. I'd like to address the issue with regards to the district court failing to properly explain its sentence. And I think that this Court's decision last week in Henderson makes it quite clear that the district court here did, in fact, err. I don't know if the Court has had the opportunity to ---- Well, the Henderson case really doesn't have an opinion. It has three opinions. They don't even agree on what they're saying. Well, I think that all three of the opinions certainly do agree that the district judge in this particular case did not make a record, making it clear that he had. It was the child pornography? It was a child pornography case. Right. And there the district judge basically said he couldn't make a decision on it, and he was going to leave it for the Ninth Circuit on appeal. So isn't that very different from what the district court judge said here? What the majority opinion or Judge Fletcher's decision says is that the district judge must make it clear that it understood that it had Kimbrough discretion to vary from the guidelines as a matter of policy. The district court here said, I have certainly considered all the arguments of counsel and certainly missed most comments and argument that she has filed in her sentencing papers with respect to the disproportionate impact that a plus 16 has on his advisory sentencing guidelines. And I think that that's largely similar to what the district judge said in Henderson. Henderson was more of an abdication, saying I really don't know what to do with this. I'm not going to take it on. This judge is saying I'm taking it out. He's not delineating everything he's thinking about it, but he's not abdicating. He's all he says is that I mean, I think that we can all agree. All he says is that I've considered it. But I don't think that that's the judge saying, I understand under Kimbrough, I have the authority to vary from the guidelines as a matter of policy. That doesn't need to say that. I mean, what case law requires him to explicitly say that? I think that Henderson says that. I mean, very clearly that the judge has to make a clear record that he understood that he had Kimbrough. By the way, I tend to agree as a personal matter that it would be interesting to see some policy support for that 16-level increase. But I don't think that the district court judges have to, in all these 1326 cases, have to explicitly reject that argument, given that, you know, it's a raging issue out there. I guess that, I mean, just reading directly from Henderson, which is on page 5615, right before the conclusion, what Judge Fletcher writes is, only when we are satisfied that the district court appreciated its Kimbrough discretion will we consider the substantive reasonableness of the sentence imposed. So basically, I mean, what the court is holding is that the district judge has to make it clear on the record that it appreciated its Kimbrough discretion and then either chose to exercise it and disagree with the guidelines or didn't. And I think that it's important that the district judges do that, because what that does is it provides feedback to the sentencing commission. Has the sentencing commission done its job in a particular guideline? And I think that the same, I mean, the same arguments applied to the illegal reentry guidelines as applied in Kimbrough to the crack cocaine cases and as applied to the child pornography cases in the Henderson opinion is that the sentencing commission hasn't done its job. It hasn't based these guidelines on empirical data. It hasn't based them on historic experience. And so when an attack is raised on these guidelines, it's essential that the district judge respond to them. Well, the Booker case gives the district judges a little bit of the discretion they used to have before all the busybodies got in there and looked at this cottage industry book of guidelines. We have to recite liturgical phrases now that cover the different cases that have emerged in this new industry. But now what kind of a liturgical phrase do we have to have the judge recite on the Kimbrough analysis? Simply that it… Can I have made the Kimbrough analysis? I recognize that I have the authority to disagree with the guidelines when they haven't, when the sentencing commission has not exercised its characteristic institutional role. I choose not to disagree with the guidelines in this case. Or I do disagree with the guidelines. And it's really that simple. So when I send somebody and I say, and I always say this, I've considered the guidelines, which are, of course, merely advisory. If I don't then mention the specific attack on the 16-point enhancement is not empirical, that's not sufficient in your view? I think that you have to, there would have to be an acknowledgment that the argument that was raised and simply respond to say that I do not think that, I think that the guidelines do embody sufficient policy that they're not inconsistent with 3553. I think the second circuit is going to reverse me a lot. I would like to reserve a little bit of time for Mr. Hubbachev. Thank you, Your Honors. Thank you, counsel. Thank you, Your Honors. Bruce Morgan on behalf of the United States on both cases for all issues. First, on 273.5, whether it's categorically a crime of violence. As Your Honors have obviously guessed, our position, I think the position of this Court, is already that it is a categorical crime of violence, and that forecloses arguments that are raised by defense counsel here. I'm speaking primarily about the Benuelos case. Although LaRico, even though the timing is not quite as awkward as Mr. Hubbachev said, I would call the timing actually dispositive for Benuelos. But LaRico actually came before Johnson. Johnson then followed. Benuelos came after Johnson. That's first and foremost the key point here. Benuelos came in July of 2010. Not only did it come after Johnson, which makes it very hard to depict Johnson as an intervening authority that's clearly irreconcilable with Benuelos, but Benuelos also directly discussed Johnson. I know that the defense counsel, that Mr. Hubbachev, has a problem with the discussion about Johnson, but the issue was the same. The arguments were the same there. It was that Johnson had changed the analysis that this Court performs on 273.5. And whether it is categorically a crime of violence. Benuelos took up that argument and devoted a paragraph to it. And in it they decided, after reviewing Johnson, it did not. It was not clearly irreconcilable with their decision in LaRico, and therefore the Benuelos opinion issued. I think it's worth noting, by the way, that a brief review of Westlaw shows that ten cases of this Court have cited Benuelos since his decision. None of those have raised an issue with Benuelos and his analysis of Johnson. I want to talk briefly about a couple things out of Benuelos and then address their attempts, I think their failed attempts, to distinguish Benuelos from what happened in Johnson. In Benuelos, the actual decision was that 273.5 requires more than a least offensive touching because it requires physical force that causes injury or traumatic condition. That, of course, matches what Johnson said. And Mr. Hubachek said the Johnson holding. And here is what it is. The specific holding was that a crime of violence requires force capable, quote, capable of causing physical pain or injury to another person, end quote. That was the holding of Johnson, and that's what in some ways the Benuelos Court adopted. Although I do want to note one thing that's interesting about that. Justice Scalia said physical force that is, quote, capable of causing physical pain or injury to another person. You don't even need the injury at all. You don't. 273.5 goes beyond that. It requires a traumatic condition. And I'll get to that in just a moment because I think that's a very important and interesting argument that they've raised. I also want to note that another issue that's raised in the briefing is that Johnson, for the first time, established that you must look to state court reviews or interpretations of state statutes. That's exactly what Benuelos did. That's actually what Loreco did as well. But I'm going to focus on Benuelos. Benuelos looked to People v. Jackson, which the defense counsel with the appellant's counsel already raised. People v. Jackson, unlike what the defense counsel just said, is actually a very interesting case and worth reading because what People v. Jackson did is actually knock the 273.5 conviction down to a simple battery. They did that because they recognized that there is more required to get a 273.5 conviction than there is in a simple battery. That's not what Mr. Hubachek described the case as, but if you read the case, that's what they did. They said this pushing of someone that they then turned around and tripped over and caused abrasions to her leg, that's not enough for a 273.5 conviction. That's the People v. Jackson case. And, again, Benuelos at 1084 said it. I guess your adversary's point is why should that make any difference? Because if you look at the language of 273.5, standing alone, it says traumatic condition means a condition of the body, whether of a minor or serious nature caused by a physical force. Okay. I've got two responses to that. Both have already been discussed. First, Duenas. Duenas is still controlling authority from the Supreme Court. What Duenas said is you don't look, you don't use, as Your Honor said, you don't use your legal imagination to come up with some sort of hypothetical, and this is Justice Breyer's words. These are his words that he used in Duenas. You don't use your legal imagination to come up with some hypothetical possibility, and I'm quoting that hypothetical possibility were his words, that could somehow turn a statute into overbroad in terms of being a categorical crime of violence. Instead, and, again, Justice Breyer's quote was, there must be a reasonable probability that this could happen. And Justice Breyer, again, this is in Duenas, and I think I urge the Court to review the paragraph Justice Breyer wrote on this. Instead, that's at 193 of Duenas. Instead, you need to present concrete examples. You need to present cases where the facts actually demonstrate a least offensive touching has caused, in the context of a crime of violence, has actually caused a conviction under 273.5. As we have said in Marico, as was argued in Venuelos, and as is argued today in both the briefs before Your Honors, there are no concrete examples where a conviction under 273.5 actually came out of anything remotely approaching slightest offensive touching. That's the first response to that. The second response, I think Your Honors have already addressed a little bit, too. I actually think that they're shifting, they're hiding the ball a little bit. In the briefing for Garcia and for Ayala, the main point that they were arguing is that 273.5 convictions can result from a least offensive touching. That was, period, that was their argument. Venuelos disputed that. Venuelos said, no, no, it needs more than a least offensive touching. So in the response to R-28J that was submitted in the Garcia case, they said, well, actually, Johnson, it actually did more than just say least offensive touching is not enough for a crime of violence. Johnson laid out this new standard, the new standard being there has to be force that causes more than a minor injury. I think they actually used de minimis force causing more than a minor injury, whatever those terms mean. First, I think there's a misreading of Johnson. Johnson, again, I think Johnson, you've got to look specifically at what the holding was about there. The holding was whether simple battery, which is almost exactly the same as simple battery here in California, could be a categorical crime of violence. And they said no. That was already law in this circuit. It hasn't been since 2006 in the Ortega case. Second, I think they confused what the actual decision was, the actual holding in Johnson was. I already talked about that. What Justice Scalia said was that, quote, physical force means violent force. That is force capable of causing physical pain or injury to another person. Nowhere in that holding is there a let's categorize the level of pain that's required. Let's somehow rank how bad the injury needs to be in order to qualify as a crime of violence. That leads to my final point. In a lot of ways, I think it's embarrassing to be talking about this because the amount of blood that is spilled is not the question the court should be looking to to decide whether something is a crime of violence. In Garcia's opening brief at 56, he talks about some of these 273.5 cases where there were minor injuries. There was only minor bleeding, quote, unquote. There was only just a bruise, quote, unquote. There were only red marks and scratches, quote, unquote, for various 273.5 cases. He points to those as examples of where minor injury is permitted under a 273.5 conviction. And somehow that's not enough for a crime of violence. As I said, quibbling over the amount of blood that has to be spilled in order to obtain, in order to decide that a statute is categorically a crime of violence, it goes too far. I think if we're going to be arguing about that, we've spent too much time in our offices and too much time with our noses in our law books. If someone gets hurt- But he's not saying to do that on a case-by-case basis. He's saying look at the statute and make that determination once, and you would say, well, you did that in Benuelos. Well, right. And I'd also say, I mean, that's not what Duenas requires. Duenas requires looking at the facts. Point to me a case. Point me in the direction of a case, a California state case, where 273.5 was violated on the basis of something that was not a violent act. It doesn't exist. And we've been arguing about this for two years now in front of this court, and no case like that has been pointed out by either side. I think my view is that judges are not in a position to try and rank the amount of injury that's required in order to get a crime of violence, a categorical crime of violence. That's what they're asking you to do. I don't think that's appropriate here. I'll move on to addressing in this case. You're not going to address in this case the issue that we consolidated for the next three cases? No, I am not. Okay. All right. That's fine. No, but I'll briefly respond. The Kimbrough issue? I'm sorry? The Kimbrough issue? Yeah, the Kimbrough issue. Okay. I think the district court in Ayala, which is the only case that that's an issue in, did more than was necessary. It certainly did what was necessary under the Ninth Circuit precedent. I want to distinguish a couple of cases that they pointed out. The first one is Ressam. Ressam is a monster of a case. It's 55 pages, and it is factually distinct, factually unique. It is the Millennium Bomber case in which someone, an individual, was trying to enter the United States to plant a bomb at LAX. They cite Ressam. In fact, in the brief, I think it's the only case they cite for this purported notion that a district court has to respond to every non-frivolous argument. Ressam is factually unique. It's not just me saying that. The Ressam court said that. If you look at Ressam at page 824, they specifically limit, before they get to their analysis, their case to opinions that are complex cases where the sentence is significantly below the guidelines. And that is not what this case is about. This is not a complex case. Mr. Ayala's case is not complex. Your Honors see cases like this all the time. Ressam specifically limits itself in that sense. Ressam also noted that Cardee, the Ninth Circuit in Cardee, said that in simple cases, a judge's failure to give explicit reasons for their sentence still does not qualify as legally insufficient. That's Cardee. In this case, it's remarkably different than Ressam. It's not a complex case involving one of the worst terrorism cases that the Ninth Circuit has seen, for sure. So it's different than Ressam. It's more like Cardee. And here the judge actually did more than what Cardee requires. The judge spent six pages of transcript going over its reasons for its sentence. It then covered the nature and circumstances of the offense, the history and characteristics of the appellant, the party's sentencing submissions, letters from the appellant's family, and as Your Honor said, he said, I have looked at all the 3553A factors and here's my sentence. Also, as Your Honor has noted, he explicitly noted that there is a policy argument in the case against the plus 16. Immediately after, I believe that Your Honor actually read it into the record, immediately after noting that, he said, and I recognize that the guidelines are advisory. And that is what distinguishes it from Henderson, the case last week, the Child Pornography case. I actually completely agree with Your Honor. In Henderson, the district judge abdicated responsibility in some ways. The district judge basically said, I'm going to leave this up to the Ninth Circuit because I've never looked at a Kimbrough-style policy attack. I don't know if I have the authority to even pay attention to it. That's radically different than what Judge Hayes did here in the Ayala case. I also just want to note, I do think it's worth noting, and I know that my opponents disagree, Judge Hayes departed from the guideline range in Ayala. He departed by a year. He went, I believe it was two and a half years under the government's recommendation, but he departed by a year underneath the guidelines. He clearly knew his advisory. He clearly knew he could depart. Actually, he did it. Unless Your Honors have further questions for me, I'll send in on the brief for the remainder of the issues. All right. Thank you, counsel. Thank you. Mr. Pavichak. Thank you, Your Honor. Just three brief points. First, I agree entirely that you should read that paragraph of Duenas, and conveniently enough it's quoted in Vidal and Grissel and supports the analysis that I'm suggesting today, that you look to the language of the statute. And I just cite from the People v. Gutierrez case, interpreting that language says that it's inherent in the definition that both serious and minor injury is embraced, trauma of all kinds. So the most minor trauma possible qualifies under this statute. Secondly, I don't know exactly what the quarrel was with my reliance on Jackson, but Jackson does hold specifically that an abrasion, which the OED defines as a graze or a scrape, is sufficient to qualify under 273.5. The only reason that that person had his conviction reversed and lowered down to a battery was that the victim tripped on the curb, not as a result of the push. So when I say that Jackson is a result, is a case that demonstrates that de minimis trauma is sufficient, I'm correct in that. And if you look at page 77, Cal F-3rd at 580, that demonstrates that that's true. And then finally, maybe you don't buy my argument that Banuelos isn't controlling, but Banuelos is clearly inconsistent with Flores v. Ashcroft, the only case cited in Johnson. If that's the case, the Court should call for an en banc review. All right. Thank you very much, counsel. These two cases will be submitted.
judges: Cogan, Goodwin, Wardlaw